United States District Court
Southern District of Texas
**ENTERED**
February 28, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Fahan Al-Sabban, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-15-1570 |
| | § | |
| Shaunda L. Ritell, | § | |
| | § | |
| *Defendant*. | § | |

# Order

Pending before the court is a motion for partial summary judgment filed by Fahan Al-Sabban. Dkt. 39-1. The court has reviewed Al-Sabban's motion for partial summary judgment (Dkt. 39-1), the record, and applicable law, and the court is of the opinion that the motion should be GRANTED.

## I. Background

This was originally an interpleader action. Dkt. 1. Regions Bank filed its complaint in interpleader on June 5, 2015, against Arnold Nkawon d/b/a N&S Auto ("N&S") and Deutsche Bank Trust Company Americas ("DB"), and it amended its complaint in interpleader on October 15, 2015, adding Al-SAbban. *Id.*; Dkt. 13.

In the amended complaint, Regions Bank contended that it received a wire for $179,970.00 into N&S's account on May 6, 2015. *Id.* Regions Bank asserted that the wire was sent by DB on behalf of The Saudi Investments Bank and Al-Sabban. Dkt. 13. Additionally, Regions Bank contended that Al-Sabban originated the wire, and that the documents specifically stated that the funds were for an "aircraft lease." *Id.* Regions Bank noted that $79,323.87 was thereafter withdrawn from the account and that a balance of $100,646.13 remained. *Id.* After this withdrawal, DB demanded that the funds be returned because the payment was due to fraudulent activity. *Id.*

Regions Bank noted that it contacted Nkawon, who advised the bank that he is in the business of purchasing cars for overseas clients and that the money Al-Sabban sent was payment for a vehicle or vehicles. *Id.* Regions Bank shortly thereafter filed its complaint in interpleader, and it amended the complaint to add Al-Sabban after Al-Sabban called and asserted an interest in the funds. *Id.*

On October 7, 2015, Al-Sabban filed an answer, asserted a claim to the interplead funds, and filed a crossclaim against Nkawon. Dkt. 14. Al-Sabban contends that he has a superior interest in the funds because N&S received the funds as a direct result of fraud perpetrated on Al-Sabban. *Id.* He asserts claims of fraud and money had and received against Nkawon. *Id.*

On October 9, 2015, DB filed an answer in which it noted it does not claim an interest in the funds and is not properly joined. Dkt. 16. It requested that the court dismiss it from the action. *Id.* On November 4, 2015, DB filed an unopposed motion to be dismissed from the case, which the court granted on November 12, 2015. Dkts. 20, 21.

On December 2, 2015, Regions Bank filed a motion to interplead the funds, in which it requested that the court authorize it to deposit the funds in the court registry, enjoin the defendants from taking any action against Regions Bank with regard to the funds, realign the defendants as the true plaintiffs and defendants, award Regions Bank $1,000.00 for fees and costs, and dismiss Regions Bank as a party. Dkt. 22. The court granted the motion on December 4, 2015, and the parties were realigned with Al-Sabban as the plaintiff and Nkawon as the defendant. Dkt. 23.

On January 8, 2016, Nkawon filed an answer to Al-Sabban's crossclaim in which he denied most allegations and denied any implication of wrongdoing. Dkt. 24.

On May 24, 2016, Al-Sabban filed a document entitled "Suggestion of Death," in which he advised the court that Nkawon's counsel advised Al-Sabban's counsel that he (Nkawon's counsel) had been unable to reach Nkawon and believed that Nkawon had passed away. Dkt. 27. Al-

Sabban's counsel contacted Nkawon's sister, who advised him that Nkawon had passed away on April 15, 2016. *Id.* Al-Sabban attached a certificate of Nkawon's death certificate to his suggestion-of-death filing; Al-Sabban had obtained the certificate from Nkawon's sister. *Id.*

On July 25, 2016, Al-Sabban filed a motion to substitute party. Dkt. 32. He moved to substitute Shaunda L. Ritell as the surviving spouse of Nkawon. *Id.* He attached public records indicated that Nkawon was married to Ritell at the time of his death and had no children with her or with his previous wife. *Id.* Al-Sabban's counsel stated that Nkawon's sister advised that Nkawon had died without a last will and testament and that no administration of his estate was expected. *Id.* The court granted the motion to substitute parties on August 17, 2016, and ordered Al-Sabban to serve Ritell. Dkt. 34.

On August 29, 2016, Al-Sabban filed a motion to substitute service. Dkt. 35. In that motion, Al-Sabban noted that the address listed on Ritell's driver's license is vacant and that there was a family that was not related to Ritell living at the address listed on Ritell's voter's registration card. *Id.* Additionally, there were new tenants living at the address listed on a divorce decree that Nkawon had filed against Ritell but later abandoned. *Id.*

The court granted leave to serve by publication pursuant to Federal Rule of Civil Procedure 4 and Texas Rule of Civil Procedure 109. Dkt. 36. A notice was published in the *Daily Court Review*, a newspaper published in Houston, Texas, on September 20, 2016, September 27, 2016, October 4, 2016, and October 11, 2016. Dkt .38. Ritell has failed to answer or otherwise respond.

On November 23, 2016, Al-Sabban moved to filed a motion for summary judgment without service by certified mail return receipt requested because he has no address at which to serve Ritell. Dkt. 39. The court granted the motion on December 14, 2016. Dkt. 40. Al-Sabban seeks summary

3

judgment on his crossclaim of money had and received.  Dkt. 39-1.  He does not request summary judgment on his fraud claim.

## II. Legal Standard

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant.  *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. Analysis

A claim for money had and received "belongs conceptually to the doctrine of unjust enrichment."  *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ).  The claim seeks to restore money where equity and good conscience require restitution in order to determine to which party the money belongs.  *Staats v. Miller*, 243 S.W.2d 686, 687 (Tex. 1951); *Edwards v. MidContinent Office Distributors, LP,* 252 S.W.3d 833, 837 (Tex. App.—Fort Worth 2005, no pet.).  The purpose for the claim is to prevent unconscionable loss to the payor and unjust enrichment to the payee.  *Bryan v. Citizens Nat'l Bank in Abilene*, 628 S.W.2d 761, 763 (Tex. 1982).  Al-Sabban must prove that the money in the court's registry in equity and good conscience belongs to him, not Ritell.  *See Staats*, 243 S.W.2d at 687.

The evidence presented with Al-Sabban's motion shows that Al-Sabban, an employee of Debah Wings, agreed to take out a personal loan to fund an $180,000.00 down payment for the lease of a 2008 Bombardier Challenger CL605 aircraft from James Tag in the United Kingdom. Dkt. 39-1, Exs. A, A-1. The agreement listed a U.S. Escrow Agent, Kirk Woford of Insured Aircraft Title Service, Inc., in Oklahoma, as the agent to whom Al-Sabban should send the $180,000.00 security deposit. Dkt. 39-1, Ex. A-1. There is an aircraft title and escrow company in Oklahoma called Insured Aircraft Title Service, Inc., and its president is named Kirk Woford. Dkt. 39-1, Ex. C. The treasurer and secretary of Insured Aircraft Title Service, Inc. ("IATS"), Christopher Fiegel, states in an affidavit filed with the motion for summary judgment that all email addresses at IATS end in "@insuredaircraft.com". *Id.* In the contract between Debah Wings and Tag, Woford's email address was listed as kwoford@insured-aircraft.com. Dkt. 39-1, Ex. A-1.

Al-Sabban corresponded with a person who had the email address with the dash between "insured" and "aircraft" (the "Dash Email Woford"). Dkt. 39-1, Exs. C, C-1. The Dash Email Woford provided wiring instructions for the $180,000.00 deposit into an escrow account under the name "N&S." Dkt. 39-1, Exs. C, C-1. He also sent Al-Sabban an Escrow Agreement which appears to be on IATS letterhead but is not, according to Fiegel, an IATS document. Dkt. 39-1, Exs. C, C-2. The Dash Email Woford included instructions for wiring the money into an account at Regions Bank to credit "N&S." Dkt. 39-1, Exs. C, C-3.

Al-Sabban attempted to wire the money into the account on April 29, 2015, but he received a notification that the transfer had been rejected. Dkt. 39-1, Ex. B. The Dash Email Woford contacted Al-Sabban on May 2, 2015, advised that the wire had been rejected due to a security mechanism, and gave Al-Sabban instructions for wiring the money into a new N&S account. Dkt. 39-1, Exs. B, B-5.

Al-Sabban wired the money to the new account on May 4, 2015.  Dkt. 39-1, Exs. B, B-6.  The wire document clearly states "aircraft lease" under "transfer details."  Dkt. 39-1, Ex. B-6.  Al-Sabban did not hear from the Dash Email Woford after this, so he contacted IATS on or about May 20, 2015.  Dkt. 39-1, Ex. B.  Upon contacted the *real* IATS, Al-Sabban was advised that it had no record of any communications from him regarding an aircraft lease and that the letters he had were not from the real Kirk Woford.  Dkt. 39-1, Ex. B.

After talking with Al-Sabban, IATS immediately contacted the Federal Bureau of Investigation Cyber Crimes Unit and Regions Bank.  Dkt. 39-1, Ex. C.  IATS requested that the Regions Bank N&S Auto account be frozen for fraudulent activity.  *Id.*  This is the second time IATS had a client who had wired money to N&S after receiving wiring instructions from the Dash Email Woford.  *Id.*  In April of 2015, a South African client had wired $350,000 to an account bearing the name N&S, and IATS has similarly requested the account be frozen after determining that the customer had received the instructions from an individual using the email address "kwoford@insured-aircraft."  *Id.*

According to Rick Welborn, an assistant vice president at Regions Bank, the N&S account was opened by Nkawon on or around December 1, 2014.  Dkt. 39-1, Ex. D.  On April 27, 2015, a wire for $350,000 was sent to the account; Regions Bank was contacted on the same day and advised that wire was unauthorized.  *Id.*  Nkawon denied knowing anything about the $350,000 wire, closed the first account, and opened a new one on May 1, 2015.  *Id.*  On May 6, 2015, a wire in the amount of $179,970 was sent to the new N&S account.  *Id.*  DB contacted Regions Bank and demanded the money be returned on May 28, 2015, because it was paid in error.  *Id.*  Regions Bank froze the funds that remained at that time and filed the interpleader action.  *Id.*

6

The N&S account, which Nkawon opened, received approximately $180,000 of Al-Sabban's money. Dkt. 39-1, Ex. D. The wire clearly states it is for a "airplane lease," not the car purchase or purchases that Nkawon alleged. Dkt. 39-1, Ex. B-6. Moreover, under the Texas Statute of Frauds, if it were for a car purchase, it needed to be in writing. Tex. Bus. & Com. Code Ann. § 2.201(a). Nwakon indicated in his responses to Al-Sabban's requests for production that he did not have any documents that evidence, reflect, or refer to any goods or services he claims to have provided Al-Sabban in exchange for the funds. Dkt. 39-1, Ex. E-1. Nwakon also stated that he had no documents evidencing any agreement or written contracts between him and Nkawon. *Id.* He also admitted in his requests for admission that he had no documentation memorializing the agreement for the purchase of automobiles. Dkt. 39-1, Ex. E-3. Since he has no writing, any agreement relating to the purchase of a car or cars would not be enforceable.

It is clear that the funds wired into the N&S account were wired to the incorrect party, as they were meant to be a down payment for an airplane lease. Al-Sabban has met his burden of showing that the money in the court's registry in equity and good conscience belongs to him, not Nwakon's heir, Ritell. Al-Sabban's motion for summary judgment on his money had and received claim therefore should be granted. The money in the court's account—$99,646.13—rightfully belongs to Al-Sabban. Additionally, Al-Sabban is entitled to an award of the difference between $180,000.00 and $99,646.13, as Nkawon clearly had and received that money prior to the account being frozen.

## IV. Conclusion

Al-Sabban's motion for summary judgment on its money had and received claim is GRANTED. Al-Sabban is entitled to the $99,646.13 that was placed in the court's account by Regions Bank and an additional award of $80,353.87 (the difference between $180,000.00 and $99,646.13) from cross-defendant Ritell. Al-Sabban's fraud claim remains pending.

Signed at Houston, Texas on February 28, 2017.

_____
Gray H. Miller
United States District Judge